# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDER OLIVIERI-NIEVES (9),<br><br>Defendant. | CRIMINAL NO. 17-596 (PAD) |

## MEMORANDUM AND ORDER

Delgado-Hernández, District Judge.

On February 16, 2018, the court revoked the U.S. Magistrate Judge's decision granting bail, and ordered defendant detained without bail pending trial (Docket No. 138). Following are the grounds in support of the court's ruling.

## I.    BACKGROUND

On November 21, 2018, defendant was charged with conspiracy to possess with intent to distribute controlled substances; aiding and abetting in the possession with intent to distribute heroin, cocaine base, cocaine, and marijuana; and possession of a firearm in furtherance of a drug trafficking crime (Docket No. 3), all in violation of 21 U.S.C. §§ 841(a)(1), 846, 860 and 18 U.S.C. § 2 and § 924(c), respectively. Id. The object of the conspiracy was to distribute controlled substances at the San Fernando Public Housing Project in Puerto Rico. Id.

On January 9, 2018, U.S. Magistrate Judge Camille L. Vélez-Rivé held both the initial appearance and detention hearing (Docket No. 44).[1] At the hearing, defendant's counsel pointed out that according to the U.S. Marshals, the Metropolitan Detention Center-Guaynabo ("MDC")

---

[1] Defendant waived the arraignment (Docket No. 45).

would not accept the defendant because of his health condition. Id.[2] The government was not present at the hearing.[3] At the conclusion of the hearing, the Magistrate Judge set bail in the amount of $5,000 unsecured with defendant's aunt's signature; and ordered defendant (1) to reside in Carolina; (2) to submit to drug testing and treatment; (3) not to approach or enter the public housing project; and (4) to comply with all standard conditions of release (Docket Nos. 25 and 44).[4]

On January 17, 2018, the government moved for reconsideration (Docket No. 38 at ¶ 3). The reconsideration request was referred to Magistrate Judge Vélez-Rivé (Docket Nos. 39 and 40), which held a hearing on January 22, 2018 to consider the government's request (Docket No. 133). At the hearing, the government moved for detention, whereas defendant asked to continue under the same conditions, for he had complied with them. After the hearing, the Magistrate Judge modified bail conditions to include a third-party custodian – defendant's aunt – and imposed a curfew to be set by the U.S. Probation Office. Id.

On February 5, 2018, the government filed a "Motion for De Novo Detention/Bail Hearing" (Docket No. 138). On February 6, 2018, the court scheduled a *de novo* hearing for February 12, 2018 (Docket No. 140), ordering the government to make "all necessary arrangements to have Ms. Aixa Pérez from MDC's legal department present at the hearing." Id.

---

[2] Defendant reported that six years ago, as a result of a gunshot wound in this back, he lost mobility of almost his entire body. See, Pretrial Services Report at p. 3. He can move his head and both arms but has some ulcers in different part of his body. Id. With respect to the MDC's inability to accept defendant, the Magistrate Judge stated for the record during the January 22nd hearing, that U. S. Marshals had advised her of this situation on January 9th.

[3] The Magistrate Judge so noted at the end of the hearing.

[4] In preparing this Opinion and Order, the court listened to the recording of the hearings held before the Magistrate Judge on January 9 and 22, 2018. With limited exceptions and contrary to the U.S. District Judges, Magistrate Judges do not have a Court Reporter present during the numerous proceedings held before them. Therefore, unless a transcript is requested in accordance with applicable rules and regulations, no transcript is prepared or available for those proceedings. The content of the hearing, however, is recorded using a Digital Court Recording "DCR" program. District Judges have immediate access to DCR audio files, and may listen to the audio files when reviewing a determination made by a Magistrate Judge.

The hearing was held as scheduled (Docket No. 157). In compliance with the order, Ms. Pérez attended the hearing, as well as MDC's clinical director, Dr. Abigail LaSalle. The testimony of doctor LaSalle was heard on behalf of the government. Based on the information received during the hearing, the court ordered that defendant be detained without bail pending trial. Id.

## II. STANDARD OF REVIEW

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, permits detention of a defendant pending trial if no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community. 18 U.S.C. §§ 3142(b) and (e). The government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).

Where probable cause is found to believe that a defendant has committed a crime listed or in the circumstances set forth in 18 U.S.C. § 3142(e), a rebuttable presumption arises that no conditions or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community. A grand jury indictment on a covered offense is enough to demonstrate probable cause for purposes of triggering the presumption. United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986); United States v. Holland, 922 F.Supp.2d 70, 71 (D.D.C. 2013).

Once triggered, the presumption imposes on the defendant a burden of production. United States v. O'Brien, 895 F.2d 810, 814-815 (1st Cir. 1990). The burden is not heavy. United States v. Stone, 608 F.3d 939, 946 (6th Cir. 2010). It is satisfied introducing at least some evidence contrary to the facts presumed. Id. Rebuttal evidence does not destroy the presumption, which does not disappear, maintaining evidentiary weight. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); O'Brien, 895 F.2d at 814-815.

The government retains the burden of persuasion throughout, in both presumption and non-presumption cases. Stone, 608 F.3d at 946; Bess, 678 F.Supp.929 at 932; United States v. Bess, 678 F.Supp. 929, 932 (D.D.C. 1988). To determine if it has met that burden, the court must consider: (1) the presumption (if applicable); (2) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (3) the weight of the evidence; (4) the history and characteristics of the defendant; and (5) the danger posed to the community by defendant's release. 18 U.S.C. § 3142(g); United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). Review of a magistrate judge's release order is *de novo*. United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990). The court must state in writing the reasons for the action taken. United States v. Moss, 887 F.2d 333, 338 (1st Cir. 1989); O'Brien, 895 F.2d at 813.

### III. DISCUSSION

#### A. Presumption

The presumption applies in this case. Offenses triggering the presumption include those carrying a maximum term of imprisonment of 10 years or more under the Controlled Substances Act, 21 U.S.C. § 801 et seq.; the Controlled Substances Import and Export Act, 21 U.S.C. § 951 et seq.; and the Marine Drug Law Enforcement Act, 46 U.S.C. App. 1901 et seq. See, Section 3142(f)(1)(C). And defendant has been charged with a violation of 18 U.S.C. §§ 841(a)(1), 846 and 860 for conspiring to possess with intent to distribute heroin, cocaine base, cocaine, and marijuana; and of 18 U.S.C. § 924(c) for possessing a firearm in furtherance of the drug trafficking crime. In all, he is facing a minimum of 15 years and up to life imprisonment. See, Transcript of

De Novo Hearing ("Transcript") at p. 17.[5] For discussion purposes, the court will assume that the presumption has been rebutted and by extension, that it retains evidentiary weight to be evaluated along with the criteria set forth in 18 U.S.C. § 3142(g).

### B. Detention Factors

1. <u>Nature and Circumstances of Offenses</u>

As previously explained, defendant is charged with 31 other individuals with conspiracy to possess with intent to distribute controlled substances; aiding and abetting in the possession with intent to distribute controlled substances; and possession of a firearm in furtherance of a drug trafficking crime. These offenses occurred, in part, within protected locations, which included a public housing project, a public school and a playground (Docket No. 3). The government proffered the defendant had an active role in the conspiracy. That is, he participated, supervised and gave orders to members of the conspiracy related to drug trafficking activity and acts of violence (Transcript at pp. 9-13; Docket No. 138 at pp. 8-9). Despite his physical limitations, he was known to be armed as part of this role in the conspiracy. And as stated above, for these violations he is facing a minimum of 15 years and up to life in prison. The offenses charged, the statutory sentencing exposure, and their underlying circumstances favor detention.[6]

2. <u>Weight of Evidence</u>

The evidence against defendant is strong. The government pointed to at least four (4) witnesses who identified the defendant as a member of the conspiracy, specifically as an armed

---

[5] District Judges have Court Reporters as part of their staff when presiding over the different proceedings held before them. Among other responsibilities listed in 28 U.S.C. § 753, reporters are responsible for promptly transcribing, when requested, the original record of all proceedings held before the judge and prepare and file a certified transcript of the same. The transcript is available, following applicable rules and regulations, to parties who have arranged payment. And it is also available at the request of a judge, at no charge to the court. District Judges have access to the rough drafts of the transcripts before a formal request is made by any interested party, or the transcript is filed for the record in the court.

[6] For present purposes, the court is entitled to rely on maximum statutory terms of imprisonment. <u>Moss</u>, 887 F.2d at 336.

enforcer. Id. at p. 9. At one point, defendant was identified as one of the "right-hands" of the leader of the drug trafficking organization, Yamil Hernández-García (a/k/a "Gongi") who is also listed in the indictment as defendant number 1. Furthermore, laws enforcement officers were able to develop corroborating evidence as to the defendant's participation in the drug trafficking organization, which include photographs that either depict him armed or with other co-conspirators.[7] Thus, the weight of evidence favors detention.

3. History and Characteristics of the Defendant

Defendant is twenty-eight years of age (Pretrial Services Report at p. 2). He completed the 7th grade. Id. He has limited fluency in English. Id. He has four siblings: two in San Juan, one in Chicago and one in New York. Id. He also referred to one paternal sibling, with whom he maintains a good relationship. And he has six kids from three different relationships, one of which defendant only recalls by his first name. From birth to 2008, he resided at his mother's home in Caparra Terrace, Puerto Rico. Id. At some point before 2008, he lived with a friend in the state of Florida for a year. Id. From 2009 to 2010, he was cohabitating with the mother of some of his children in the San Fernando Project Housing. Id. From 2011 to 2015, he moved back with his mother. Id. He has limited mobility, and does not have a U.S. passport. Id. The parties agree that he is not a risk of flight, and after bail was granted he appeared in court on two different occasions (Transcript at p. 16). On balance, these elements favor release.

Shifting lenses, even though defendant has no prior convictions, the Pretrial Report discloses some prior contacts with the local state criminal system. Id. at p. 4.[8] Similarly, he

---

[7] A photo showing the defendant holding a rifle and a pistol, and with a bulletproof vest at his feet was submitted by the government as Exhibit A of Docket No. 138.

[8] In the past, defendant had been arrested for aggravated trespassing, illegal appropriation, and transportation and disposal of stolen property (Pretrial Services Report at p. 4). The arrest did not result in conviction. Instead, defendant was placed under the custody of the Drug Court Program and was ordered to participate in substance abuse treatment. After the shooting that led to his paralysis,

admitted that he was a daily marijuana user, which may accentuate risk of flight. And as noted earlier, he faces up to life imprisonment, which provides a motive to flee. See, United States v. Valentín-Cintrón, 656 F.Supp.2d 292, 296 (D.P.R. 2009)(identifying potential ten-year sentence in risk-of-flight analysis). All in all, these factors neutralize the aspects of defendant's personal history and characteristics favoring release.

4. The Danger Posed to the Community by Defendant's Release

Defendant contends that the government has indicted and arrested all of the co-conspirators, and therefore, he can no longer contact or give orders to other members of the conspiracy if granted bail (Transcript at pp. 16, 19). In addition, he claims that there are many illegal cell phones at MDC to allow him to have contact with people outside of the detention facility if he so wished, and for that reason, the government's concern that he will be able to speak to co-conspirators is not resolved by housing him at MDC or at any other medical institution. Id.[9] Lastly, he states that he is not the same person he was back in 2015 – when the last overt act in furtherance of the conspiracy allegedly occurred; given his physical condition, limited mobility and lack of adequate medical care he is physically unable to hold, much less discharge, a firearm; and accordingly, that if he were to remain under the conditions of release the Magistrate Judge

---

he was unable to attend all his appointments, and the case was closed ("archivado"). The nature of the offenses in this case, however, are different, exposing him to life in prison. See, United States v. Pérez-Franco, 839 F.2d 867, 870 (1st Cir. 1988)(denying bail to defendants charged with violating 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i) and 846, in part because although they did not have a prior criminal record, they faced serious consequences as a result of the charges).

[9] At the hearing, doctor La Salle explained that when an inmate with significant medical limitations arrives at MDC, the clinical team conducts an assessment of the inmate's medical condition in order to determine whether they can accommodate him/her and provide the required medical care at MDC or if a "step-down facility" needs to be contacted to provide the custodial care of that individual. If a defendant is transferred to a "step-down facility" because skilled care is required, the inmate is still under the custody of the Bureau of Prisons (Transcript at pp. 1-6). The step-down facility provides care in that facility. Id. at pp. 7-8. The Bureau of Prisons has step-down facilities in Puerto Rico. Id. at p. 8.

imposed, he would not pose a danger to the community. Id. at pp. 19-20.[10]   The court is not persuaded.

The legislative history of the Bail Reform Act repeatedly emphasizes that defendants who have threatened witnesses pose a significant danger to the community. See, S. Rep. No. 225, 98th Cong., 1st Sess. At 7, 12, 15, 21, reprinted in 1984 U.S. Code Cong. & Adm. News at 10, 15, 18, 24, 25 (Supp. 9a); see also, United States v. Muñiz-Alvarez, 2015 WL 8770039, *5 (so noting while denying bail); United States v. LaFontaine, 210 F.3d 125, 132 (2nd Cir. 2000)(witness tampering has supported detention or revocation of bail where the government proffer in bail revocation hearing that defendant had intimidated some individuals related to case); United States v. Wind, 527 F.2d 672, 675 (6th Cir. 1975)(court may consider evidence that the defendant has threatened witnesses and is a danger to the community in determining whether he should be released on bail).

The government proffered that defendant has been successful in executing a plan designed to threaten and intimidate witnesses into not appearing in court, and led a meeting to threaten the witnesses, *from* his wheelchair *while in possession* of a rifle. Id. See also, Transcript at pp. 12-14; 25-26.[11]  Moreover, the defendant himself was known to be armed, respected and feared by members of the drug trafficking organization regardless of his physical limitation. Id.; see also,

---

[10] The court's review of the record confirms that the defendant was released at the initial appearance because of his medical state and because there were concerns that MDC was not going to house him. Those concerns, however, were clarified by the government to the court's satisfaction at the *De Novo* hearing with the testimony of doctor LaSalle.

[11] In particular, the government referred to a shooting at the Vista Hermosa Public Housing Project (a known enemy of the San Fernando gang indicted here) by Gongi and other members of the conspiracy. As a result, one person was killed and another person was injured in front of a seventeen (17) year old minor. The minor was so close to the shooting that blood spattered onto him. Gongi was charged locally for this crime. While he was at a Puerto Rico detention facility, a meeting was arranged – primarily by the defendant – where a witness and the parent of the minor were taken to San Fernando. At San Fernando, these two individuals were met by at least fifteen (15) masked co-conspirators, most of whom were armed. The defendant was the leader of this group and the person who had an open line on a cellular phone. On the other side of the line was Gongi, who was calling from jail. The individuals were offered money or free-travel to the mainland, in order for them not to testify in the proceedings against Gongi. Defendant was in his wheelchair at the meeting, armed with a rifle, and was the only one who spoke to the witnesses, aside from Gongi. Those efforts were successful, as the witnesses did not testify at trial and the murder and firearms charges were dismissed.

pp. 9, 11. Thus, his contention that he is not a danger to the community because he is in a wheelchair or because he is unable to discharge a firearm is belied by this own acts as a member of the conspiracy.

As the evidence suggests, defendant is trusted by the drug trafficking organization, and there are still unindicted conspirators in the community. The congressional definition of the term "danger" encompasses harm to society caused by drug trafficking. See, United States v. León, 766 F.2d 77, 81 (2d Cir. 1985)(so recognizing). As such, if released, defendant could have access to drug trafficking activities that pose a special risk of danger to the community. See, United States v. Rivera-Nieves, 265 F.Supp.3d 173, 178 (D.P.R. 2017)(so noting while denying bail)(citing United States v. Kay, 2008 WL 4449504 at *3 (N.D. Texas Oct. 1, 2008)(denying bail to a defendant found with 100 kilograms of cocaine with an approximate street value of $2 Million in part because evidence indicated that he was a trusted member of the conspiracy, with conspiracy connections available to him). Given the evidence presented, and regardless of defendant's physical limitations, there is a strong likelihood that, if released, defendant will return to drug trafficking endeavors.

## IV.    CONCLUSION

Having carefully considered all the evidence as well as the available range of release conditions, the court concludes that the government has shown, by preponderance of the evidence, that no condition or combination of conditions will reasonably ensure defendant's appearance in court; and by clear and convincing evidence, that no condition or combination of conditions will assure the safety of the community if defendant is released. The nature and circumstances of the offenses charged, including potential penalty; the weight of the evidence; and danger to the community outbalance other elements in defendant's personal and history and characteristics

arguably supporting release. The evidentiary weight of the rebutted presumption (assuming it was rebutted), lends added support for this conclusion. In consequence, the defendant shall be detained without bail pending trial.

**SO ORDERED.**

In San Juan, Puerto Rico, this 9th day of May, 2018.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge
